IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHARON ELAINE ALLEN HOLMES, <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF UTAH (Department of Workforce Services), <br><br> Defendant. | **REPORT & RECOMMENDATION** <br><br> Case No:  2:06-CV-786 TS <br><br> District Judge Ted Stewart <br><br> Magistrate Judge David Nuffer |

Plaintiff Sharon Holmes, an employee of the Utah Department of Workforce Services, filed this case alleging sex-based employment discrimination and retaliation in connection with her failure to receive a promotion.  Subsequently, Defendant filed a motion for summary judgment.[1]  Holmes did not respond to the motion.  Because Holmes has failed to meet her burden on summary judgment, the motion should be granted.

## BACKGROUND

### A.  Holmes' Allegations

Holmes has been employed by the Utah Department of Workforce Services (DWS) from August 1993 to the present.  She was formerly employed at the Cedar City office of DWS from 1997 until December 2001.  Holmes states that she voluntarily left the Cedar City office to escape a hostile work environment after she and three co-workers raised sexual harassment allegations against a male office manager, Curtis Johnson.  At the time the instant case was filed,

---

[1]Docket no. 22, filed June 4, 2008.

Holmes was assigned to the South Davis County office in Woods Cross where she was supervised by Kathy Leiker and Kay Petro. [2]

In July 2005, Holmes applied for the position of Lead Worker in the South Davis Office, the third time that she had applied for that position.[3]  However, the position was given to Alan Holbrook.[4]  Holmes alleges that she had more experience than Holbrook (eleven years vs. two years) and that she was more qualified for the position.[5]  Holmes further asserts that Holbrook gave an incorrect answer to a question during the screening interview while Holmes gave the correct answer.[6]  Holmes alleges that DWS' failure to give her the promotion constituted sex-based discrimination and retaliation for her prior discrimination charge and lawsuit.[7]

## B.  Defendant's Additional Facts

The following additional facts are taken from Defendant's memorandum in support of its motion for summary judgment.[8]  Under the local rules, all material facts set forth by the moving party are deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party.[9]  In this case, Holmes has not filed any opposition to the

---

[2]Complaint ¶¶ 6-7.

[3]*Id.* ¶ 15.

[4]*Id.* ¶ 20.

[5]*Id.* ¶¶ 19-20.

[6]*Id.* ¶ 17.

[7]*Id.* ¶¶ 28-34.

[8]Memorandum in Support of Defendant's Motion for Summary Judgment (Supporting Memorandum), docket no. 23, filed June 4, 2008.

[9]DUCivR 56-1(c).

motion; thus, Defendant's facts are deemed admitted.  The court notes, however, that Defendant's facts are supported by sworn declarations in the record.

After Holmes transferred from Cedar City, she was assigned to work as an Eligibility Specialist.[10]  In early July 2005, the South Davis Employment Center posted a vacancy for the position of Lead Eligibility Specialist.[11]  The vacancy was created when the former Lead Eligibility Specialist, a female, was transferred to another office.[12]

The Utah Job Match System yielded seven candidates, five females and two males, who met the minimum qualifications for the position.  However, one of the seven candidates later withdrew.[13]  Both Holmes and Alan Holbrook were among the seven candidates who were determined to have met the minimum qualifications.[14]

The three-member selection committee consisting of the hiring supervisor, Kay Petro Buckley,[15] Debbie Sheldon, and Laura Taylor, interviewed the six remaining candidates.[16]  In choosing the successful candidate, the selection committee gave equal weight to the following four factors:  (1) interview score, (2) case accuracy, (3) case timeliness, and (4) 2005

---

[10]Supporting Memorandum ¶ 4; Leiker Declaration ¶ 5, attached as exhibit 1 to Supporting Memorandum.

[11]Supporting Memorandum ¶ 7; Leiker Declaration ¶ 7; Petro Buckley Declaration ¶ 5, attached as exhibit 3 to Supporting Memorandum.

[12]Supporting Memorandum ¶ 8; Petro Buckley Declaration ¶ 6.

[13]Supporting Memorandum ¶ 10; Petro Buckley Declaration ¶ 9.

[14]Supporting Memorandum ¶¶ 11-12; Petro Buckley Declaration ¶ 11.

[15]The complaint refers to this individual as Kay Petro.  Kay Petro's married name is Kay Buckley.  (Leiker Declaration at 2, footnote 1.)  Because Defendant consistently refers to this individual as Kay Petro Buckley, the court will do the same.

[16]Supporting Memorandum ¶ 12; Petro Buckley Declaration ¶¶ 8, 10.

performance evaluation results.[17]  Applicant teamwork and leadership skills were also taken into consideration, but seniority at DWS was not considered in the selection process.[18]

Holmes scored higher than Holbrook on the interview questions.[19]  She and Holbrook had the same cumulative case accuracy score.[20]  However, Holmes' cumulative timeliness score was only 50%, while Holbrook's score was 98.8% which was the top score for timeliness among the six candidates.[21]  Holmes' score was by far the lowest of the six candidates.[22]  Defendant states that timeliness is important because public benefits must we awarded according to government-mandated timelines.  Failure to comply with the timelines can result in sanctions for the state.[23]

With regard to the 2005 performance evaluations, Holbrook received a "highly successful" rating, while Holmes had only a "successful" rating, tying her for last place on this factor.[24]  Further, Petro Buckley noted no deficiencies on Holbrook's 2005 evaluation.  In fact, she stated that he was "excellent with his customers, coordination with expectations, timeframes as well as with office personnel."[25]  Holbrook also received higher scores than Holmes for

---

[17]Supporting Memorandum ¶ 13; Petro Buckley Declaration ¶ 12.

[18]Supporting Memorandum ¶¶ 14-15; Petro Buckley Declaration ¶¶ 13-14; Leiker Declaration ¶ 14.

[19]Supporting Memorandum ¶ 16; Petro Buckley Declaration ¶ 15.

[20]Supporting Memorandum ¶ 17; Petro Buckley Declaration ¶ 16.

[21]Supporting Memorandum ¶ 18; Petro Buckley Declaration ¶ 17.

[22]Supporting Memorandum at 5, footnote 3; Petro Buckley Declaration ¶ 18.

[23]Supporting Memorandum ¶ 19; Petro Buckley Declaration ¶ 19.

[24]Supporting Memorandum ¶¶ 20-21; Petro Buckley Declaration ¶ 20.

[25]Supporting Memorandum ¶ 22; Petro Buckley Declaration ¶ 21.

customer service, core duties, and teamwork.[26]  In contrast, Petro Buckley noted several

deficiencies on Holmes' 2005 performance evaluation including that she needed to improve her

timeliness and accuracy on child care benefit cases, as well as her accuracy on food stamp

benefit cases.[27]  Further, Holbrook had demonstrated excellent leadership skills during his two

years at the South Davis Employment Center, and had received the office's customer service

award for the past three years in a row.[28]  On the other hand, Petro Buckley did not consider

Holmes to be good "leadership material" despite her seniority at DWS and her knowledge of

DWS policies and procedures.[29]  In particular, Petro Buckley felt that Holmes was resistant to

change in the office.  In addition, Petro Buckley had received a number of customer complaints

about Holmes' customer service in the past.[30]  Ms. Leiker, the South Davis Employment Center

Manager, also had concerns about Holmes' leadership abilities.[31]

Based on the forgoing reasons, Ms. Petro Buckley recommended Holbrook to Ms. Leiker

as the selection committee's top choice for the Lead Eligibility Specialist position.[32]  Ms. Leiker

had observed Holbrook's performance at the office and had been favorably impressed by his

customer service and leadership skills.[33]  Based on her own observations and Ms. Petro

---

[26]Supporting Memorandum ¶ 22; Petro Buckley Declaration ¶ 21.

[27]Supporting Memorandum ¶ 23; Petro Buckley Declaration ¶ 22.

[28]Supporting Memorandum ¶ 24; Petro Buckley Declaration ¶ 23.

[29]Supporting Memorandum ¶ 25; Petro Buckley Declaration ¶ 24.

[30]Supporting Memorandum ¶ 26; Petro Buckley Declaration ¶¶ 25-26.

[31]Supporting Memorandum ¶ 27; Leiker Declaration ¶ 13.

[32]Supporting Memorandum ¶ 28; Petro Buckley Declaration ¶ 27; Leiker Declaration ¶ 9.

[33]Supporting Memorandum ¶ 29; Leiker Declaration ¶ 10.

Buckley's recommendation, Ms. Leiker approved the selection committee's choice of Holbrook for the vacant position.[34]

At the time the South Davis Employment Center was recruiting for the job in July 2005, Leiker was unaware of Holmes' discrimination charge and lawsuit stemming from the allegations of sexual harassment in the Cedar City office.[35]  Similarly, Petro Buckley was only generally aware that Holmes had filed a lawsuit in connection with her previous employment at the Cedar City office, and was unaware of the details.[36]

Holmes continued working as an Eligibility Specialist in the South Davis office until approximately one year ago when she was selected for a two-year career mobility assignment at the American Fork DWS office.  Holmes volunteered for the career mobility assignment.  Ms. Leiker submitted her name to the Regional Director because she thought the career mobility assignment was both a good opportunity for Holmes and good match for her skill set.  Holmes also received a two-step pay increase in connection with the career mobility assignment.[37]

DWS employs 95 lead employment counselors, 79 of whom are female and 16 are male. Since 2003, DWS has promoted 730 employees, 67% of whom were female.[38]  The interview panel, or selection committee, was made up of three female employees, and both the manager

---

[34]Supporting Memorandum ¶ 30; Leiker Declaration ¶ 10.

[35]Supporting Memorandum ¶ 33; Leiker Declaration ¶ 15.

[36]Supporting Memorandum ¶ 32; Petro Buckley Declaration ¶ 28.

[37]Supporting Memorandum ¶¶ 34-36; Leiker Declaration ¶.

[38]Supporting Memorandum ¶ 37.

and the supervisor of the Lead Eligibility Specialist position are female.  The Lead Eligibility

Specialist whose transfer created the vacancy was also female.[39]

## C.  **Plaintiff's Prior Sex Discrimination Lawsuits**

In addition to this lawsuit, Holmes has filed three other lawsuits against DWS.[40]

(1) *Holmes v. State of Utah (Department of Workforce Services)*, case no. 2:03-CV-909

TC.  This is apparently the case to which Holmes refers in the instant complaint in which she and

three co-workers sued DWS alleging that manager Johnson sexually harassed them.  On

November 26, 2002, Holmes filed a discrimination charge with the EEOC based on the alleged

sexual harassment in Cedar City.[41]  On October 14, 2003, after the EEOC issued a right-to-sue-

letter, Holmes and her three co-workers filed a suit against DWS in federal court alleging that

Johnson had sexually harassed them while they worked in the Cedar City office.[42]  Subsequently,

the district court granted summary judgment in favor of the defendant.[43]  Holmes appealed, and

the Tenth Circuit affirmed the decision of the district court.[44]

(2) *Holmes v. State of Utah (Department of Workforce Services)*, case no. 2:04-CV-940

PGC.  On October 7, 2004, Holmes filed a federal lawsuit against DWS alleging retaliation for

---

[39]*Id.* ¶¶ 38-39.

[40]*Id.* ¶ 40.

[41]*Id.* ¶ 5; Complaint in *Holmes v. State of Utah (Dep't of Workforce Servs.)*, Case no. 2:03-CV-909 TC ¶ 52(A).  However, the Tenth Circuit opinion affirming the district court's decision  in that case states that the EEOC charge was filed on March 22, 2003.  See *Holmes v. Utah Dep't of Workforce Servs.*, 483 F.3d 1057, 1062 (10th Cir. 2007).

[42]Supporting Memorandum ¶ 6; see Complaint in *Holmes v. State of Utah (Dep't of Workforce Servs.)*, Case no. 2:03-CV-909 TC.

[43]Order & Memorandum Decision, attached to Supporting Memorandum as Exhibit 5.

[44]*Holmes v. Utah, Dep't of Workforce Servs.*, 483 F.3d 1057 (10th Cir. 2007).

the earlier sexual harassment charge and litigation.[45]   That case was dismissed by the district

court for failure to comply with Fed. R. Civ. P. 4(m).[46]

     (3) *Holmes v. State of Utah (Department of Workforce Services)*, case no. 1:07-CV-103

DB.  On July 20, 2007, Holmes filed a lawsuit alleging that DWS' failure to hire her for a

position at the Cedar City office was retaliation for her prior sexual harassment complaint and

lawsuit.[47]   The district court also dismissed that case.[48]

## DISCUSSION

### A.  Standard for Summary Judgment

     Summary judgment is appropriate if there is no genuine issue as to any material fact and

the moving party is entitled to a judgment as a matter of law.[49]   "When applying this standard,

[the court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most

favorable to the nonmoving party."[50]

---

[45]See Complaint in *Holmes v. State of Utah (Dep't of Workforce Servs.)*, Case no. 2:04-CV-940 PGC, attached to
Supporting Memorandum as Exhibit 6.

[46]Order of Dismissal, attached to Supporting Memorandum as Exhibit 7.

[47]See Complaint in *Holmes v. State of Utah (Dep't of Workforce Servs.)*, Case no. 1:07-CV-103 DB, attached to
Supporting Memorandum as Exhibit 8.

[48]Order Adopting Report & Recommendation, attached as Exhibit 10 to Supporting Memorandum.

[49]Fed. R. Civ. P. 56(c).

[50]*Sanders v. Sw. Bell Tel.*, 544 F.3d 1101, 1105 (10th Cir. 2008)(quoting *Simms v. Okla. ex rel. Dep't of Mental
Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

**B.  Discrimination Claim**

Holmes alleges that Defendant discriminated against her because of her sex by awarding

the position to a male (Holbrook) with less experience and qualifications.[51]  A plaintiff may

prove sex discrimination by either direct or circumstantial evidence.[52]  "Direct evidence is

evidence from which the trier of fact may conclude, without inference, that the employment

action was undertaken because of the employee's protected status."[53]  For example, if an

employer's policy is discriminatory on its face, that would constitute direct evidence of

discrimination.[54]

More commonly, the plaintiff will not have direct evidence of discrimination and must

establish her claims by circumstantial evidence.  In that case, the court analyzes the claims under

the *McDonnell Douglas* framework.[55]  Under that analysis, the plaintiff "bears the initial burden

of setting forth a prima facie case of discrimination."[56]  If the plaintiff establishes a prima facie

case, "the burden shifts to the employer to give a legitimate, nondiscriminatory reason for its

employment decision."[57]  "If the employer comes forward with a nondiscriminatory reason for its

actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material

---

[51]Complaint ¶¶ 29-30.

[52]*Sanders*, 544 F.3d at 1105; *see Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

[53]*Sanders*, 544 F.3d at 1105; see *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007).

[54]*Sanders*, 544 F.3d at 1105; *see Ramsey v. City & County of Denver*, 907 F.2d 1004, 1007-08 (10th Cir. 1990).

[55]*Sanders*, 544 F.3d at 1105.  See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[56]*Sanders*, 544 F.3d at 1105 (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998)).

[57]*Sanders*, 544 F.3d 1105.

fact as to whether the employer's proffered reason for the challenged action is pretextual–i.e., unworthy of belief."[58]  If the plaintiff demonstrates pretext, summary judgment is not appropriate.[59]

In this case, Defendant has provided legitimate, nondiscriminatory reasons for promoting Holbrook, rather than Holmes.  Of the four equally weighted factors considered by the selection committee, Defendant concedes that Holmes scored higher than Holbrook on the interview questions.  They both had the same cumulative accuracy score.  However, Holbrook had a higher rating on the other two factors.  Specifically, Holbrook had the highest score for timeliness of any of the candidates while Holmes had the lowest score.  In addition, Holbrook's 2005 performance evaluation was better than Holmes.'  Further, Petro Buckley and Leiker considered Holbrook's customer service and leadership skills to be superior to those of Holmes.  In fact, Holbrook had won the customer service award three years in a row.  In contrast, Petro Buckley had received a significant number of customer complaints about Holmes' customer service.

Since defendants have provided specific, legitimate reasons for choosing to promote Holbrook instead of Holmes, the burden now shifts to Holmes to show that there is a genuine issue of material fact as to whether the asserted reasons are pretextual.  As previously noted, Holmes has not filed an opposition to the motion for summary judgment.  Holmes alleged in her complaint that Holbrook received the promotion even though he was less experienced and less

---

[58]*Sanders*, 544 F.3d at 1105; *see Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[59]*See Sanders*, 544 F.3d at 1105; *Morgan*, 108 F.3d at 1323.

qualified than she was.[60]   "Mere allegations unsupported by further evidence, however, are insufficient to survive a motion for summary judgment."[61]

DWS has provided legitimate reasons why the selection committee considered Holbrook to be the superior candidate.  Because Holmes has not demonstrated that there is a genuine issue of material fact as to whether DWS' reasons for choosing Holbrook are pretextual, she has failed to carry her burden on summary judgment.

## C. Retaliation Claim

Homes also alleges that DWS' refusal to promote her was retaliation for the discrimination charge and the lawsuit she filed in connection with her employment at the Cedar City office.[62]   In analyzing a retaliation claim, the court applies the three-part *McDonnell Douglas* test discussed above.[63]   Under this test, Holmes "bears the initial burden of establishing a prima facie case of retaliation."[64]   If she establishes a prima facie case, "the burden shifts to Defendant to come forward with a non-discriminatory reason for its employment decision."[65]   If the employer provides a non-discriminatory reason, "the burden shifts back to the Plaintiff to show that 'there is a genuine issue of material fact as to whether the employer's proffered reason

---

[60]Complaint ¶ 29.

[61]*Potts v. Davis County*, 551 F.3d 1188, 1192 (10th Cir. 2009)(quoting *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005)).

[62]Complaint ¶¶ 33-34.

[63]*Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008), *petition for cert. filed*, 77 U.S.L.W. 3400 (U.S. Dec. 24, 2008)(No. 08-819).

[64]*Id.* (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006)).

[65]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).

for the challenged action is pretextual, i.e., unworthy of belief.'"[66]   To establish a prima facie case, Holmes "must show that:  (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action."[67]

In this case, DWS does not dispute that Holmes has established the first element of a prima facie case, i.e., she engaged in protected activity by filing a discrimination charge and lawsuit based on the allegations of sexual harassment at the Cedar City office.  Similarly, DWS concedes that the failure to receive a promotion may be considered an adverse employment action, thus satisfying the second element.  DWS argues, however, that Holmes cannot satisfy the third element of a prima facie case because she cannot show a causal connection between the promotion decision and her protected activity.[68]   In support of this argument, DWS asserts that the (1) the time gap between the protected activity and the adverse action is too great; and (2) the decision-makers, Ms. Petro Buckley and Ms. Leiker were unaware of the details of Holmes' allegations, discrimination charge, and ensuing lawsuit based on the events at the Cedar City office.[69]

---

[66]*Id.* (quoting *Morgan*, 108 F.3d at 1323).

[67]*Vaughn*, 537 F.3d at 1150 (quoting *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1122-23 (10th Cir. 2007)).

[68]Supporting Memorandum at 13.

[69]*Id.* at 13-14.

1.  **Time Gap**

"[A] plaintiff can establish a causal connection by temporal proximity between the protected activity and adverse action."[70]  "However, unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[71]  In this case, the adverse action (failure to promote) occurred almost two years after the filing of the Cedar City sexual harassment lawsuit.  Since the protected activity was not closely followed by the adverse action, Holmes is not entitled to a presumption that the adverse action was motivated by the protected activity.[72]  Holmes has provided no additional evidence to support her retaliation claim beyond Defendant's failure to promote her.  Accordingly, the court concludes that Holmes has not established a prima facie case of retaliation based upon temporal proximity between the protected activity and the adverse action.

2.  **Knowledge of the Protected Activity**

The court also concludes that Holmes' retaliation claim is undermined by the decision-makers' lack of knowledge concerning her protected activity.  It is well established that those who are alleged to have taken a retaliatory action must have been aware of the specific protected

---

[70]*Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008); *Haynes v. Level 3 Communic'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006).

[71]*Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007)(quoting *Anderson*, 181 F.3d at 1179)(emphasis in original).

[72]*Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1183-84 (10th Cir. 2002)(three-month delay too long to support an inference of causation); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)(three-month period between protected activity and termination, standing alone, did not establish causation).

activity.[73]  Ms. Leiker states that at the time of recruitment for the lead eligibility specialist, she was not aware that Holmes had filed discrimination charges and a lawsuit in connection with the allegations of sexual harassment at the Cedar City office.[74]  Although Ms. Petro Buckley was generally aware that Holmes had filed a lawsuit in connection with her employment at the Cedar City office, she was not aware of the details.[75]  In light of the decision-makers' lack of knowledge and the lengthy delay between Holmes' protected activity and the alleged retaliatory action, the court concludes that Holmes has failed to establish a prima facie case of retaliation.

Assuming, however, that Holmes has established a prima facie case, she has not shown that DWS' reasons for choosing Holbrook for the position are pretextual.  As discussed, if a plaintiff establishes a prima facie case of retaliation, the court employs the familiar *McDonnell Douglas* burden-shifting analysis.  "A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[76]  However, "[m]ere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment."[77]

---

[73]*Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1184 (10th Cir. 2002); *Jones v. UPS, Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007)("Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee *because* of the protected conduct.").

[74]Supporting Memorandum ¶ 33; Leiker Declaration ¶¶ 15-16.

[75]Supporting Memorandum ¶ 32; Petro Buckley Declaration ¶ 28.

[76]*Anderson*, 181 F.3d at 1179 (quoting *Morgan*, 108 F.3d at 1323).

[77]*Anderson*, 181 F.3d at 1179.

In this case, DWS has come forward with valid, non-discriminatory reasons for its promotion decision as discussed above.  The burden then shifts to Holmes to show that a reasonable factfinder could find DWS' reasons not credible.  Although Holmes alleged in the complaint that the failure to promote was retaliation for her protected activity, "[m]ere allegations unsupported by further evidence . . . are insufficient to survive a motion for summary judgment."[78]  Holmes has not responded to the motion for summary judgment, and thus has failed to carry her burden to show that Defendant's reasons for its hiring decision are pretextual. Accordingly, DWS is entitled to summary judgment on the retaliation claim.

---

[78] *Potts*, 551 F.3d at 1192 (quoting *Baca*, 398 F.3d at 1216).

## RECOMMENDATION

No genuine issue of fact exists on either of Holmes' claims.  Therefore, Defendant's

motion for summary judgment[79] should be granted.

## NOTICE

Copies of this Report and Recommendation are being mailed to the parties, who are

hereby notified that they have the right to object to the Report and Recommendation.  The

parties are further notified that they must file any objections to the Report and Recommendation

with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after

receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent

appellate review.

February 10, 2009.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

---

[79]Docket no. 22, filed June 4, 2008.